# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:07CV334

| | |
|---|---|
| AUDREY GOODWIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| HARRINGTON, MORAN, ) | |
| BARKSDALE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment. For the reasons set forth below, the motion is **GRANTED**.

## UNCONTRADICTED FACTS

The facts, viewed in the light most favorable to the Plaintiff, Audrey Goodwin, are as follows. Defendant Harrington, Moran, Barksdale, Inc. ("HMBI" or "Defendant"), is a minority owned corporation headquartered in Fort Worth, Texas. HMBI provides professionals to market and manage single-family homes across the country for the Department of Housing and Urban Affairs ("HUD") and independent agencies. HMBI has minorities in all levels of employment within the company, including management.

HMBI hired Plaintiff Audrey Goodwin ("Goodwin" or "Plaintiff"), an African American female, on September 29, 2004. Goodwin was a customer support manager and oversaw the administrative staff in HMBI's accounting department, customer service department, and the mail room.

While employed at HMBI, Goodwin never received a formal performance evaluation.

However, under Ms. Goodwin's supervision, the customer service department received a score of 100 on the HUD report card. This score was a portion of the HUD report card that entitled the entire office to receive a bonus. Ms. Goodwin never received a raise, but she did get two cost of living adjustments.

While at HMBI, Plaintiff had a relationship with the technology manager, Keith Miles. For the purposes of summary judgment, the only relevant facts are that Plaintiff and Mr. Miles were having lunch three to four times a week. Plaintiff ended the relationship with Mr. Miles around September or October 2005. On September 14, 2005 Plaintiff made the decision to hire Christina Blue (Ms. Blue's official start date was September 19, 2005). Much of the controversy in this case involves this customer service agent, Christina Blue, a white female whom the Plaintiff was in charge of managing. (Plaintiff's Response, Doc. 23, p. 3). There were rumors and gossip in the office that Ms. Blue and Mr. Miles began having a personal relationship outside the office. In addition to her inter-office relationship, Ms. Blue was also having problems with work and attendance.

In January of 2006, staff members sent an e-mail to Human Resources Manager Zarassa Wyatt describing a heated altercation between Mr. Miles and Ms. Blue. Ms. Wyatt investigated the incident and then reported to Danny Bryant, the Contract Manager of the Charlotte office, that the incidents did not occur but that Plaintiff had instructed the employees to make the false report. After these reports, Danny Bryant, Sheri Marvin, and Human Resources in HMBI's corporate office in Texas decided to terminate Plaintiff due to her lack of professionalism and her inability to effectively manage her staff. On February 13, 2006, HMBI terminated Plaintiff.

Immediately following her termination, Plaintiff submitted a letter to Earl Cummings, an HMBI management executive in Texas, asking to be reinstated. In the letter she describes her problems with Ms. Wyatt's interference with her employees. She also admits that she had a "lapse of good judgment and engaged in a personal relationship with another manager."

Prior to filing the complaint, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue on May 14, 2007. Plaintiff filed her complaint in this matter on August 14, 2007.

**DISCUSSION**

    **A. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. C. P. 56(e); *Anderson*, 477 U.S. at 250. This is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole*, 48 F.3d. 1376, 1381

3

(4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and, therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151.

**B. Retaliation Claim**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to retaliate against an employee because she has made a good faith complaint of Title VII discrimination. 42 U.S.C. § 2000e-3 (a); *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). Here, Plaintiff lacks direct evidence that HMBI retaliated against her in violation of Title VII, and therefore proceeds under the familiar burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). A Plaintiff may prove retaliation under the burden shifting framework of *McDonnell Douglas* by first establishing a prima facie case for retaliation.[1] If the Plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to produce evidence that the Defendant took the adverse employment action for a legitimate, non-retaliatory reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the Defendant meets its burden of production, then the Plaintiff must prove by a preponderance of the evidence that the employer's stated reason for taking the adverse employment action was in fact a mere pretext for retaliation. *Reeves*, 530 U.S. at 143.

Plaintiff Goodwin alleges that her termination was retaliation for warning superiors of disparate treatment based on race. More specifically, Plaintiff claims she became concerned that she was not allowed to discipline Christina Blue, a white employee, the same as she would discipline African-American employees. After the alleged confrontation between Mr. Miles and Ms. Blue, Plaintiff claims to have brought the matter to the attention of Danny Bryant and Ms. Wyatt with a recommendation that they terminate Ms. Blue. Plaintiff alleges that Bryant claimed HMBI needed a certain amount of white staff on board. Soon after, Plaintiff claims to have

---

[1] To prove a prima facie case of retaliation, Goodwin must show (1) that she engaged in a protected activity; (2) HMBI took an adverse employment action against her; and (3) there is a causal connection between the two. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

approached Mr. Bryant about a situation wherein Ms. Blue left work early without letting a manager at the facility know she was leaving. Plaintiff allegedly confronted Mr. Bryant about this situation and pointed out to him that a few weeks earlier, he had required her to write up a black employee named Kiwanis Dunmore, when Dunmore missed work without calling in. Apparently, Plaintiff "cited to Bryant that it was disparate treatment based upon race where he was requiring her to write up Dunmore, but not allowing her to address the situation involving Blue." (Plaintiffs Response, Doc. 23, p. 12). One week later HMBI terminated her. However, even assuming (without deciding) Goodwin can establish a prima facie case of retaliation, summary judgment is appropriate because Goodwin has failed to provide sufficient evidence that is contrary to HMBI's legitimate, non-retaliatory reason for terminating her.

HMBI claims that it discharged Goodwin for her lack of professionalism and her inability to properly manage her staff. This is a legitimate reason for taking adverse action against an employee. Therefore, HMBI has met its burden of articulating a legitimate non-retaliatory reason for terminating Goodwin.

Goodwin can show that HMBI's reasoning is a mere pretext either by showing that HMBI"s explanation is unworthy of credence or through circumstantial evidence sufficiently probative of retaliation. *Mereish v. Walker*, 359 F.3d 330, 336 ( 4th Cir. 2004). Goodwin puts forth several arguments why HMBI's reasoning was mere pretext for retaliation. However, Goodwin's evidence demonstrates only that she was involved in various inter-office dramas involving her subordinates and another African-American female manager.

One of the main reasons for Goodwin's termination was an alleged coercion of employees to falsely report information to Human Resources. The report involved an alleged

heated altercation between Christina Blue and Keith Miles in which Ms. Blue left her work station crying and rushing after Mr. Miles. An e-mail was then sent to human resources describing the event. According to her Declaration, Zarassa Wyatt investigated the incident and one of the accounting staff that made the report admitted that the report was false and had been done at the direction of Goodwin. However, Goodwin has presented evidence that the altercation did in fact happen and that she did not intimidate or encourage any employee to lie.

Deborah Roscoe, a current employee who sat near Christina Blue, testified that she knew for a fact that Ms. Blue was sobbing, crying , yelling, and creating a very unprofessional situation when she left a customer on hold while running down the hall to argue with Mr. Miles. Ms. Roscoe testified that Goodwin never intimidated any employees into falsifying a report. In fact, Ms. Roscoe testified that it was Zarassa Wyatt that intimidated other employees into saying bad things about Goodwin. Furthermore, Ms. Roscoe testified that there was friction and animosity between Zarassa Wyatt and Goodwin. In a letter Goodwin wrote the day she was terminated, she wrote that her termination was "the design of the Human Resources Generalist, Zarassa Wyatt, and it is completely non-substantiated and personal." (Plaintiff Dep. p. 83; Letter to Cummings, Exhibit 4 of Plaintiff's Dep.). Plaintiff's evidence does not support a finding that the legitimate, non-retaliatory reason for her termination was merely pretext, rather, it supports a finding that Plaintiff and Zarassa Wyatt, an African-American female Manger, had personal issues. The characterization that HMBI's reasoning for Goodwin's termination was pretext for retaliation is not substantiated by any evidence other than her own opinion. While Ms. Goodwin may feel she did not deserve to get fired, it is not the court's job to determine whether an employment decision was wise, fair, or correct, only whether it was retaliatory. *DeJarnette v. Corning, Inc.*, 133 F.3d

293, 299 (4th Cir. 1998).

This is not to say there is no dispute in the evidence. The parties dispute whether Plaintiff intimidated employees into writing a false e-mail report, and there is evidence to support both sides. However, it is not a "genuine" dispute within the contemplation of the summary judgment rule because Plaintiff has not presented sufficient evidence for a reasonable jury to conclude that because of this dispute, HMBI's legitimate non-retaliatory reason for terminating her was mere pretext. *Sylvia Development corp. v. Calverty County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). In fact, the uncontradicted evidence shows that Plaintiff did engage in unprofessional behavior while at HMBI and this behavior affected her ability to manage her employees. The following is a direct quote from the letter she wrote to Mr. Cummings on the day of her termination:

> I must say this, I had a lapse in good judgment and engaged in a personal relationship with another manager. This was not appropriate and I realize the mistake. You need to know this and hear it from me. It is over. Unfortunately, there is more to the story. I hired a new Customer Service Rep. in Sept., this young lady appeared to be qualified though in retrospect I realize she was somewhat immature.
>
> She gleaned my relationship, quite by accident, with the other manager. From that time to now she has not performed her job in a responsible way. She has had a warning and several conversations of reprimand. She has now engaged in a relationship with the same manager, but has brought it into the office and it does, at times affect her work. I have had to speak to her concerning her lapses in judgment when speaking with customers, i.e., leaving the customers hanging on the phone.

The overwhelming evidence, in the light most favorable to the Plaintiff, shows that Plaintiff allowed her personal relationships and personal issues with Ms. Blue, Mr. Miles, and Ms. Wyatt cause her to act unprofessionally and cause her to be unable to effectively manage her staff.

**C. Gender and Race Claims**

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff conceded that the evidence of record is insufficient to show that Goodwin was unlawfully terminated because of her race or her gender. Therefore, the court grants summary judgment to Plaintiff's gender and race claims under Title VII, § 1981, and § 1981a.

**D. N.C. Equal Employment Practices Act (EEPA) and N.C. Public Policy**

In determining the parameters of a claim under N.C. Gen Stat. § 143-422.2, the North Carolina Supreme Court has found that courts should follow the principles established in federal discrimination cases. *North Carolina Dept. of Correction v. Gibson*, 308 N.C. 131, 141 (1993). Therefore, for the reasons discussed above, the court will grant summary judgment to Plaintiff's North Carolina EEPA and public policy claims.

**E. Negligent Supervision**

In North Carolina, to support a claim of negligent supervision against an employer, a Plaintiff must prove that "the incompetent employee committed a tortuous act resulting in injury to Plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. Privette*, 128 N.C. Ct. App. 490-95 (1998). Plaintiff alleges that Contract Manager Danny Bryant turned a blind eye and failed to monitor Ms. Wyatt's tactics in fabricating claims as to the reasons and rationale for terminating Plaintiff. Plaintiff alleges that these actions interfered with Plaintiff's right to continued productive employment. Again, the evidence does not support this claim. Prior to terminating Plaintiff, Ms. Wyatt, Mr. Bryant, Sheri Marvin (assistant contract manager), and Brenda Jackson from HMBI's corporate office met on several occasions to discuss Plaintiff's negative work issues. Indeed, HMBI terminated Plaintiff for her unprofesionalism and inability to manage her staff. Plaintiff presented no evidence

besides mere speculation, that an incompetent employee committed a tortuous act against her, and that HMBI had reason to know of such incompetency. Unsupported speculation and opinion is not enough to overcome summary judgment. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

In sum, Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact that may be submitted to a jury. HMBI is therefore entitled to judgment as a matter of law. For these reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

Signed: March 23, 2009

Graham C. Mullen
United States District Judge